UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LADELL HENDERSON, | ) |
| | ) |
| Plaintiff, | ) 10 C 6836 |
| | ) |
| v. | ) Judge George M. Marovich |
| | ) |
| MICHAEL P. RANDLE, JACKIE MILLER, | ) |
| LAWRENCE NGU, PARTHASARATHI | ) |
| GHOSH, EVARISTO AGUINALDO, | ) |
| LIPING ZHANG, and | ) |
| LATONYA WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ladell Henderson ("Henderson") seeks relief under § 1983 for violation of his constitutional right to be free from cruel and unusual punishment. The three remaining defendants–doctors Parthasarathi Ghosh ("Dr. Ghosh"), Evaristo Aguinaldo ("Dr. Aguinaldo") and Liping Zhang ("Dr. Zhang")–move for summary judgment.[1] For reasons set forth below, the Court grants defendants' motion.

**I.    Background**

Unless otherwise noted, the following facts are undisputed.[2]

---

[1]Pursuant to Federal Rule of Civil Procedure 41(b), the Court hereby dismisses John Does 1-3 for failure to prosecute. Plaintiff's claims against the other defendants were previously dismissed.

[2]Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the

Plaintiff Henderson, who is 48 years old and has a third-grade education, has been incarcerated at Stateville Correctional Center since 1995. Henderson has been diagnosed with diabetes and hypertension since, he estimates, the late 1990's.

At Stateville, inmates with diabetes and/or hypertension attend clinics for those conditions every two or three months. During his time at Stateville, Henderson has not missed any clinics or refused to attend any clinics. During those clinics, medical personnel told Henderson that his hypertension and diabetes could lead to kidney disease.

At those clinics, Henderson's blood and urine were tested with respect to more than thirty different diagnostic measures. On several occasions between February 2007 and January 2009, Henderson's laboratory results revealed that his blood urea nitrogen, creatinine and albumin were "out of range." Although Dr. Ghosh and Dr. Aguinaldo had told Henderson that they would inform him if his laboratory results were "out of range," they did not do so. On June 26, 2008, Henderson had a 2% renal failure and a 2% renal deficiency. Henderson does not know whether he was taking medication for kidney disease during this time period.

On September 23, 2009, Henderson suffered a diabetic hypoglycemic episode in his cell and slipped in and out of consciousness. On October 5, 2009, Henderson was told, for the first time, that he had a severe kidney problem. On October 24, 2009, Henderson was referred to an

---

fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, of course, does not absolve the party putting forth the fact of its obligation to support the fact with admissible evidence. See *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. Complaint allegations are not evidence. *Burrell v. City of Mattoon*, 378 F.3d 642, 648 (7th Cir. 2004) ("mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment").

on-site nephrologist for the first time. On October 27, 2009, Henderson was admitted to Provena St. Joseph Hospital for surgery and hemodialysis.

## II.     Summary judgment standard

Summary judgment should be granted when "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.    Discussion

Henderson seeks relief under 42 U.S.C. § 1983 against defendants Drs. Aguinaldo, Ghosh and Zhang for alleged violation of his eighth amendment right to be free from cruel and unusual punishments. Pursuant to §1983, one may bring suit against any person who caused a violation of his constitutional rights under color of state law. 42 U.S.C. § 1983; *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).

Although the constitution does "not mandate comfortable prisons," it does prohibit cruel and unusual punishments, which, among other things, means that prison officials must provide adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). "Deliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment['s]" prohibition on cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). The Supreme Court elaborated on the meaning of deliberate indifference in *Farmer v. Brennan*, where it said:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of cruel and unusual punishment.

*Farmer v. Brennan*, 511 U.S. at 837-38 (internal citations omitted). Thus, neither negligence nor malpractice constitutes a violation of the constitution. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("Evidence that the official acted negligently is insufficient to prove deliberate indifference."); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.").

An inmate's disagreement about a treatment decision ordinarily is not evidence of a constitutional violation. As the Supreme Court explained in *Gamble*:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . .

*Gamble*, 429 U.S. at 107. "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Henderson asserts that each individual defendant caused a violation of his Eighth Amendment right to be free from cruel and unusual punishments. It is important to understand what Henderson is not claiming. Henderson is not claiming that defendants were deliberately indifferent to his serious medical condition during or after his hypoglycemic episode on September 23, 2009. Nor does Henderson take issue with the treatment he received for his diabetes and hypertension.

Instead, what Henderson claims is that defendants should have known much sooner–perhaps as early as February 2007–that his kidneys were damaged and should have done something about it. Henderson's evidence is that the defendants tested his blood every two or three months at clinics and learned that his creatinine and blood urea nitrogen levels were "out of range." Although the doctors were treating Henderson's underlying diabetes and hypertension the entire time, he believes they did nothing to prevent his kidneys from becoming damaged.

In order to survive defendants' motion for summary judgment, Henderson must put forth evidence from which a reasonable jury could conclude that the treatment provided to him between February 2007 and his hypoglycemic episode was so far afield of accepted professional standards as to raise the inference that it was not based on medical judgment. Henderson has not done so. Henderson has put forth evidence that doctors monitored his blood every two or three months during this time period. Henderson has also put forth evidence that those tests reflected

"out of range" results for creatinine, blood urea nitrogen and albumin. (The Court will take judicial notice of the fact that elevated creatinine levels indicate that the kidneys are not functioning well.) Henderson, however, has not put forth any evidence of what the accepted treatment would be under these circumstances. Perhaps the treatment these defendants provided (monitoring Henderson's blood every few months and treating his underlying diabetes and hypertension) was consistent with the accepted standard for dealing with poorly-functioning kidneys. Without evidence of what the accepted standard of care is (or some other evidence that would allow the jury to conclude that defendants were far afield of what they ought to be doing), no reasonable jury could to conclude that the treatment Henderson received was far afield of the accepted professional standard.[3]

Based on the evidence Henderson put forth in his statement of facts, no reasonable juror could conclude that the treatment provided to him before his hypoglycemic episode was so far afield of accepted professional standards as to raise the inference that it was not based on medical judgment. Defendants are entitled to summary judgment on Henderson's claim.

---

[3]In *Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000) (which the plaintiff cites, though not for this issue), the plaintiff put forth evidence that could help a jury understand what the accepted standard of care was. In that case, an inmate suffered from appendicitis for two weeks before being taken to a hospital for emergency surgery for a ruptured appendix and a gangrenous bowel. *Id*. at 608-609. There, the plaintiff had put forth evidence that on four separate days, health care providers had written into their notes, "rule out appendicitis." The Seventh Circuit said, "A jury could understand the notation 'rule out appendicitis' to mean that sufficient tests should be performed to eliminate that as a potential cause of [plaintiff's] pain. However, the staff never performed the tests needed to rule out appendicitis. If they had, they would have discovered [plaintiff] did in fact have appendicitis." *Id*. at 611. This Court thinks that is the type of evidence a plaintiff might put forth to show what the accepted standard of care is, but Henderson has put forth nothing of the sort in this case.

## IV. Conclusion

For the reasons set forth above, the Court grants defendants' motion for summary judgment. Case closed.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: March 8, 2013