# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LADELL HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-6836 |
| ) | |
| PARTHSARATHI GHOSH, EVARISTO ) | Judge Sharon Johnson Coleman |
| AGUINLADO, and LIPING ZHANG, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ladell Henderson filed a complaint against Parthsarathi Ghosh, Evaristo Aguinaldo, and Liping Zhang, physicians who have provided him medical treatment during his incarceration with the Illinois Department of Corrections. Henderson alleged in his complaint that defendants were deliberately indifferent to his serious medical needs. Defendants move for summary judgment on all the claims brought against them. For the reasons stated below, the Court denies the motion.

**Background**

The following facts are undisputed. Henderson is an inmate in the Illinois Department of Corrections and is currently incarcerated at Stateville Correctional Center. (Dkt. 188 ¶ 3.) He suffers from diabetes and high blood pressure (hypertension), both of which are risk factors for kidney disease. (*Id.* ¶ 11, 14.) Because of these conditions, Henderson was a patient at Stateville's Diabetes Clinic and Cardiac Clinic from February 2007 through September 2009. (Dkt. 193 ¶ 2.) Prior to a clinic visit, Henderson's blood would be drawn so that a complete metabolic panel ("CMP") test could be performed. (*Id.* ¶ 3.) The CMP tests measured the levels of the following substances in Henderson's blood: creatinine, albumin, blood urea nitrogen ("BUN") and hemoglobin A1c. (*Id.*) On January 22, 2008, Dr. Aguinaldo reviewed the CMP test results from blood drawn six days

earlier. (*Id.* ¶ 9.) Dr. Aguinaldo testified that the change in Henderson's hemoglobin A1c from October 2007 to January 2008 indicated an increased likelihood that Henderson's kidney was damaged. (*Id.*) After January 2008, it was Dr. Zhang that reviewed Henderson's lab reports and saw him in the clinics. (*Id.* ¶ 10.) Dr. Zhang's assessment of the lab results from blood drawn on October 14, 2008 was that Henderson's creatinine level signified kidney damage and some loss of kidney function (renal insufficiency). (*Id.* ¶ 15.) By February 2009, Dr. Zhang believed there was a high risk that Henderson would need dialysis. (*Id.* ¶ 21.)

On September 23, 2009, Henderson was found hypoglycemic in his cell. (*Id.* ¶ 22.) He described the hypoglycemic episode as being like "a state of sleep" where he could hear what was going on around him but could not control himself or "come out of it." (Dkt. 186-2 at 15.) He stated it was something he would "never want to experience again." (*Id.* at 14.) Henderson's CMP test results from that month indicated a "significant advancement in renal failure." (Dkt. 193 ¶ 23.) On October 24, 2009, Dr. Zhang wrote that Henderson's treatment plan should include a referral to a nephrologist (a kidney specialist) for evaluation. (Dkt. 188-8 at 21.) Three days later, Henderson was admitted to Provena St. Joseph Hospital with end stage renal disease and began receiving dialysis, which he presently continues to receive. (Dkt. 193 ¶¶ 26-27.)

Dr. Ghosh believes that Henderson's kidney failure was the inevitable result of Henderson's diabetes and hypertension. (Dkt. 188-7 at 19.) Dr. Zhang also believes it was caused by Henderson's uncontrolled hypertension. (Dkt. 193 ¶¶ 15-16, 21.) However, Henderson's expert, Dr. Grumet, testified that there were at least three other possible causes of Henderson's kidney disease: glomerulonephritis, a disease which causes high levels of protein in the urine; an adverse reaction to Vasotec or Lasix, two medications that had been prescribed to Henderson; or hydronephrosis, a backing up of the bladder causing urine to overflow into the kidneys. (Dkt. 188 ¶ 15; Dkt. 186-3 at 9-10.) He also testified that identifying and treating these causes of kidney disease can prevent

kidney failure. (*Id.*) Dr. Grumet further testified that the standard of care required physicians to screen for these other possible causes of kidney disease. (Dkt. 186-3 at 10.) Additionally, Dr. Grumet testified that because diagnostic tests for these other possible causes were not performed, the exact cause of Henderson's kidney failure cannot now be determined. (*Id.* at 12; Dkt. 188 ¶ 17). However, Dr. Grumet noted, "the vast majority" of patients with hypertension and diabetes "never end up with" end stage renal disease. (Dkt. 186-3 at 12.) Finally, Dr. Grumet testified that the standard of care also required consultation with a nephrologist about Henderson's worsening kidney function. (Dkt. 188 ¶ 31). When asked to specify the point at which defendants should have known to consult a nephrologist, Dr. Grumet testified it should have been when Henderson's creatinine level reached 2.7. (Dkt 186-3 at 11.) Henderson's creatinine reached this level in January 2008. (Dkt. 193 ¶ 3.)

**Legal Standard**

Summary judgment is appropriate if the evidence shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the "initial responsibility" to show that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), but the Court must view all facts and make all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Court may enter summary judgment only if the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir.2000).

**Discussion**

A healthcare provider treating incarcerated persons violates the Eighth Amendment when he or she displays deliberate indifference to an incarcerated individual's serious medical need. *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). To survive summary judgment on a claim of deliberate

3

indifference, a plaintiff must provide evidence that his medical condition was objectively serious and that the defendants were aware of his condition and knowingly disregarded it. *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011). Even where a doctor has not completely ignored a plaintiff's medical condition and has provided some treatment, a significant and unreasonable delay in providing *effective* treatment can still support a claim of deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). A plaintiff must show that the defendants were reckless with his health, exhibiting something more than poor medical judgment or negligence. *Id.*

It is undisputed that Henderson's medical condition was objectively serious; the parties only dispute whether defendants were deliberately indifferent to it. Henderson's expert, Dr. Grumet, testified that the standard of care required defendants to refer Henderson to a nephrologist much earlier than they did and to perform additional diagnostic tests which would have determined if something other than hypertension and diabetes was causing Henderson's kidney failure. Defendants rely on the assertions of their own expert, Dr. Kale, to argue that the treatment measures proposed by Dr. Grumet were not required under the standard of care, even if they would have been appropriate. Accordingly, Defendants maintain, Henderson has introduced no evidence from which a factfinder could conclude that Defendants' treatment decisions were based on anything other than reasonable medical judgment.

Putting to one side that Dr. Kale's letter is inadmissible because it lacks an accompanying affidavit that verifies its authenticity, *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003), the conflicting expert opinions demonstrate the existence of a material factual dispute. This weighs *against*, not for, a grant of summary judgment. Furthermore, both Dr. Aguinaldo and Dr. Zhang testified that Henderson's lab results indicated a worsening of kidney function from 2007 through 2009. In February of 2009, Dr. Zhang believed that Henderson's lab results indicated he would likely need dialysis, a decision that would ultimately have to be made by a nephrologist. Yet Zhang did not

refer Henderson to a nephrologist until October of 2009, one month after Henderson was found semi-conscious and hypoglycemic in his cell. A factfinder could conclude from this evidence that defendants knew but recklessly disregarded the need for a nephrologist to evaluate Henderson's condition from 2007 through 2009.

Defendants also argue that, even assuming they were deliberately indifferent to Henderson's serious medical condition, Henderson cannot show that their conduct caused him any harm. Since it was never determined whether Henderson's kidney failure was the unavoidable result of his high blood pressure and diabetes or caused by some other factor, Defendants assert that Henderson cannot show a different course of treatment would have ameliorated his kidney function. In deliberate indifference cases where the medical treatment is delayed rather than denied, the plaintiff must provide "verifying medical evidence that the delay (rather than the … underlying condition) caused some degree of harm." *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015). Because causation is a normally a question for the jury to decide, it is only "in the rare instance that a plaintiff can proffer *no* evidence that a delay in medical treatment exacerbated an injury" that summary judgment should be granted. *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010)(emphasis added). An expert's testimony may be considered evidence of causation even where the expert cannot testify "with complete certainty about the cause of an injury" if he can testify that "one factor could have been a contributing factor to a given outcome." *Id.* at 619. Furthermore, "evidence of the general standard of care is a sufficient basis from which a jury reasonably could infer" that an injury is attributable to the failure to be treated consistent with that standard. *Roe v. Elyea*, 631 F.3d 843, 866-67 (7th Cir. 2011). Henderson has offered evidence that defendants deviated from the standard of care and that the vast majority of patients with high blood pressure and diabetes that are treated consistent with the standard of care do not end up with end-stage renal disease. This is sufficient to permit the question of causation to go before a jury.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment [185] is denied.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: April 11, 2016